# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEAS
# FORT WORTH DIVISION

IN RE:

Shabnam Qasim MD PA

| | |
|---|---|
| § | |
| § | |
| § | CASE NO. 18-43088-MXM-11 |
| § | Chapter 11 |
| § | |
DEBTOR § | |

## PATEINT CARE OMBUDSMAN'S FIRST QUALITY OF CARE REPORT

COMES NOW, Greer A. Smith, MSN, RN, CMSRN, CCM, Patient Care Ombudsman ("PCO"), 1[and] pursuant to 11 U.S.C. 333, submits his first report.

[1] The Ombudsman was appointed in the above-captioned bankruptcy case on September 13, 2018

## PATEINT CARE OMBUDSMAN'S FIRST CLIENT CARE REPORT

COMES NOW, Greer A. Smith, MSN, RN, CMSRN, CCM, Patient Care Ombudsman ("PCO"), 1[and] pursuant to 11 U.S.C. 333, submits his first report.

The Patient Care Ombudsman ("PCO") was retained by the Court on September 13, 2018. Accordingly, the PCO was to file the 1st PCO report to the Court within 60 days from date of appointment, November 13, 2018.

This first report will focus on information obtained in interview with Dr. Shabnam Qasim, her office administrator at the time Adrian Nolley, direct observations and phone calls to past employees and current patients of the medical practice

**DESCRIPTION OF GREER A. SMITH, MSN, RN, CMSRN, CCM**

I have been in nursing since 1994; I began my nursing career as an LVN, (Licensed Vocational Nurse) in 1994. I have clinically practiced in nursing homes, acute care facilities and hospitals as an LVN. In 1995 I entered the BSN (Bachelor of Nursing) transition program at The University of Texas in Tyler. I obtained my BSN in 2001. I obtained my Master's Degree in Nursing Leadership and Management in 2013. Since obtaining my LVN license in 1994, I have worked all major clinical areas of large university based and nonprofit based hospital chains as a bedside clinical nurse. I have worked for major pharmaceutical firm in research and served as RN consultant for an Independent Living Facility in Tyler, Texas. I completed an extensive education in Legal Nurse Consultant training program and was Certified Legal Nurse Consultant. I have performed consulting for both the plaintiff and defense providing legal nurse consulting for law firms in Texas, Arkansas, Louisiana, Oklahoma, and California since that time. I worked one full year as an in-house legal Nurse consultant for a large defense practice in Ft Worth, Texas. I continue to consult with the Smith County, Texas legal system since 2001 in geriatric abuse

and intervention cases. I have previously completed a PCO assignment with the Northern District of Texas and Eastern District of Texas. I am clinically certified as a Medical Surgical Nurse Clinician since 2013. I also hold certifications in Case Management. I am currently serving as a Clinical Educational Specialist with large local health care entity.

## DESCRIPTION OF FACILITY

Dr. Shabnam Qasim's medical practice is located at 4819 River Oaks Blvd. in River Oaks, Texas, which is a part of Fort Worth, Texas. The medical practice is in an older strip shopping center, which is anchored by a variety of small store front businesses. The interior of the medical practice resembled that of a typical small medical practice, with sectioned off patient waiting area, and private entry to the medical exam rooms and offices. There was a check in desk separated by large window occupied by two receptionists when I made my visit. The exam rooms were well supplied with the equipment and supplies necessary to conduct normal medical office business. The rooms were clean and orderly. The patient bathroom was clean and orderly and stocked appropriately for medical practice. The signage was appropriate for a small medical practice.

Dr. Qasim's internet identification is still listed under the Privia Medical Group "We Care Clinic" heading, located at http://www.wecareclinictx.com/.

## OMBUDSMAN VISITS

I visited Dr. Qasim's office on October 5, 2018, I was introduced to the employees by the office administrator at the time, Adrian Nolley and an explanation/purpose of my visit was provided to each employee and they were encouraged to be open and honest with all communication with me. I first visited with Adrian Nolley, she explained her job description and the office procedural processes that she was attempting to set into place for better patient care record keeping, management of patient prescription delivery and recording processes, attempting to make sure that Dr. Qasim was expedient in closing out her patient medical records in a

95     timely manner to provide the data to payors. Adrian discussed the turnover of
96     staff and the recent loss of a Nurse Practitioner and Physician Assistant related
97     to the current financial condition of Dr. Qasim's Practice. I then sat down with
98     Dr. Qasim for approximately 45 minutes and listened to her explain what she
99     thought was the reason for her having to file for Bankruptcy Protection. She
100   discussed reimbursement levels from payor sources diminishing and more
101   difficult to collect, staff expenses, general office expenses, and she discussed
102   being monitored by The State of Texas Medical Board for an infraction related to
103   narcotic prescriptions. Dr. Qasim advised me she had now referred her pain
104   patients to certified pain management physicians around the area, however, when
105   reviewing her narcotic prescription records, I did observe some narcotic pain
106   medication prescriptions to about eight patients. I observed one patient that had
107   two DEA controlled prescriptions written on the same day for same medication,
108   on the second prescription was handwritten, "to be filled on---". I did cross check
109   the narcotic prescriptions with drug screen labs for each patient on record, and
110   those complied with requirements.
111   Dr. Qasim discussed with me her interaction and contract with Previa Medical
112   Group, and that in her opinion they had not done as promised, being increase
113   payor reimbursements, reduce her medical practice overhead and streamline the
114   overall medical practice operations. She advised me that she had just stopped
115   doing business with Previa, although some of her billings were still being
116   processed by Previa. Dr. Qasim discussed her personal financial situation,
117   raising her son, possibility of foreclosure on her home. Dr. Qasim advised me that
118   her sister, whom is Certified Rheumatologist MD was going to join her in her
119   practice, and the revenue stream should improve due to fact this is a specialty
120   practice that typically will generate more income from her sister's participation.
121   Dr. Qasim advised me that she just wanted to practice medicine and not have to
122   be concerned with all the delicate issues involved dealing with payor sources.
123
124

## CLIENTS

Dr. Qasim's office currently has about 105 current and active patients on her roster in which I was provided. In doing some phone calls to patients that had shown recent activity and appointments soon to occur, I compiled a frequent theme of concerns. I heard frequently that patients had great difficulty in getting in touch with Dr. Qasim's office. Complaints about phone call messages left on office recording machine never returned, issues such as refills not taken care of for weeks, and request for medical records not addressed. Patients advised me that they would see Dr. Qasim in her office, be given a prescription for an antibiotic for example, yet Dr. Qasim's office would not submit the prescription to their pharmacy.

## CLINICAL

In the matter of medication prescriptions not being transmitted in a timely manner, this has moderate potential for patient harm. For example, if a patient is examined by Dr. Qasim and determined to have an infection, then the timely administration of appropriate antibiotic is vital to start the healing process, delay of a few days to a week of getting the antibiotic treatment initiated could cause the infection to worsen, with possible sepsis. In the matter of failure to communicate with her patients, Dr. Qasim is not in timely communication to talk to a patient that might be having some type of reaction or interaction with therapy treatment.

## CONCLUSION/CONCERNS

My current concerns are derived from the interview with Dr. Shabnam Qasim, her past Administrator of her office Adrian Nolley, current patients, past employees and my personal observations and opinions from all above. I received a call on October 29, 2018 from Adrian Nolley, the past Office Administrator for Dr. Qasim's office to inform me that she had resigned

from that position on October 15, 2018. We discussed issues related to her deciding to resign and concerns she may have had with operation of Dr. Qasim's practice. Adrian advised me that frequently, Dr. Qasim would call the office at 7:45 am, when her first appointment was at 8:30 am, and notify staff she was not going to be in office that day. Adrian advised me that sometimes, this occurred two times per week, which would then upset staff and her patients, because they would have to reschedule or miss appointments. Adrian Nolley informed me, which was also knowledge gained in discussions with past employees, that the office staff had high turnover rate, and this was due to the way Dr. Qasim treated her employees, often talking down to them. Adrian informed me that Dr. Qasim had been switching from one office management system or administrator to others frequently. Adrian advised me that Dr. Qasim was very difficult to work with, and not open to advice or guidance from others trying to help her simplify her office operations and assist her to maximize her reimbursements. Adrian advised me that Dr. Qasim was not open to change or had the willingness to allow autonomy to others to do their job without Dr. Qasim interfering or changing valid processes.

My recommendations are that Dr. Qasim employ an office administrator that has the education, knowledge, and proven skills to operate a medical practice efficiently and productively. That with this administrator, Dr. Qasim allow autonomy to perform her job without trying to interfere. I would recommend that Dr. Qasim be more open to change and accepting assistance from those that understand medical clinic operational and revenue generation the best. I recommend that Dr. Qasim immediately designate one employee to answer phone calls during office hours, and an employee to play back office phone recorder messages twice per day for vital messages. I recommend that Dr. Qasim designate one employee to make certain all medication prescriptions, medical records, and

185 correspondence is done in a safe and timely manner. I will continue to
186 monitor this practice and pay special attention to the areas I have
187 mentioned that cause me concern.
188
189
190                                                              /s/Greer A. Smith
191                                       Greer A. Smith, MSN, RN, CMSRN, CCM
192                                                     8181 Midtown Blvd. # 7109
193                                                              Dallas, TX 75231
194                                                                  903-571-7725
195                         PATIENT CARE OMBUDSMAN FOR US TRUSTEE/ COURT
196
197
198
199

200